# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **EDGAR A. TORREALBA,** | : | **CIVIL NO. 3:CV-06-0108** |
| **Plaintiff** | : | |
| | : | **(Judge Munley)** |
| **v.** | : | |
| | : | |
| **KAREN HOGSTEN, et al.,** | : | |
| **Defendants** | : | |

:::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::

## MEMORANDUM

Plaintiff, Edgar A. Torrealba, formerly an inmate at the Allenwood Federal

Correctional Institution[1] ("FCI-Allenwood") in White Deer, Pennsylvania, commenced this

pro se civil rights action pursuant to Bivens[2] and 5 U.S.C. §§ 552(a) and 702. (Doc. 1.)

Subsequently, plaintiff filed an amended complaint (Doc. 56) with leave of court. Currently

pending is a motion to dismiss plaintiff's amended complaint or, in the alternative, for

summary judgment (Doc. 68) filed on behalf of the following defendants, all of whom are

current or former officials at FCI-Allenwood: Warden Karen Hogsten; S.A. Holencik,

former Acting Warden; former Warden Troy Williamson; James Lyons, Special Investigative

Services ("SIS") Lieutenant; Brian Feltman, former SIS Lieutenant; Judge Simmons,

Correctional Counselor; Ronald Bonner, Staff Psychologist; James Hepner, former

---

[1]Plaintiff is currently confined at the Federal Correctional Institution at Sheridan, Sheridan, Oregon.

[2]Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics, 403 U.S. 388 (1971). Bivens stands for the proposition that "a citizen suffering a compensable injury to a constitutionally protected interest could invoke the general federal question jurisdiction of the district court to obtain an award of monetary damages against the responsible federal official." Butz v. Economou, 438 U.S. 478, 504 (1978).

Lieutenant; Scott Clarkson, former Lieutenant; and, Lamar Shepard, Lieutenant. The motion is fully ripe for disposition. For the reasons set forth below, the motion will be granted in part and denied in part.

Also pending are miscellaneous motions which will be disposed of in the following manner. Torrealba's motion to amend the complaint (Doc. 126) will be denied. His motion for production of documents (Doc. 120) will be denied as moot and his motion to exceed the brief page limitation (Doc. 122) will be granted.

## I.    <u>Motion to amend</u>

Plaintiff seeks leave to amend (Doc. 126) his amended complaint (Doc. 57) in order to make a showing of physical injury for the purpose of meeting the physical injury requirement of the Prison Litigation Reform Act (PLRA). (Doc. 126, at 1.) The PLRA, 42 U.S.C. § 1997e(e), predicates a prisoner's claim for compensatory damages related to emotional or mental injury suffered while in custody on a showing of an accompanying physical injury. See <u>Mitchell v. Horn</u>, 318 F.3d 523, 533 (3d Cir. 2003). The Third Circuit has held that in order to satisfy Section 1997e(e)'s physical injury requirement, a plaintiff must demonstrate a less than significant but more than *de minimis* physical injury. See <u>id.</u> at 536; <u>see also</u> 28 U.S.C. § 1346(b)(2) (providing that "no person convicted of a felony who is incarcerated while awaiting sentencing or while serving a sentence may bring a civil action against the United States or an agency, officer, or employee of the Government, for mental or emotional injury suffered while in custody without a prior showing of physical injury"). Review of the

2

allegations of physical injury contained in the amended complaint, *i.e.* panic attacks, insomnia, loss of memory and concentration, severe anxiety, and bleeding and receding of the gums, have been reviewed and determined to be sufficient for purposes of the PLRA. Consequently, the motion to amend the amended complaint (Doc. 56) will be denied.

## II    Motion to Dismiss

### A.    Pertinent allegations of the complaint

Torrealba alleges that on June 17, 2004, he was removed from general population at FCI-Allenwood and placed in administrative detention in the Special Housing Unit ("SHU") by defendants Lyons and Feltman under the pretext of an "SIS investigation." (Doc. 56, at 3, ¶ 14; 6, ¶ 29.) After thirty consecutive days in administrative detention, defendants Hepner, Clarkson and Shepard failed to bring him "before the 'Segregation Review Official' for a hearing, nor was he ever in his entire '24 months' in administrative detention." (Id. at 4, ¶ 18.) Likewise, he alleges that defendant Bonner failed to give him a psychological assessment with a personal interview after thirty days segregation or at any point throughout the twenty-four month period. (Id. at 4, ¶ 19.) In addition, defendants Shepard, Clarkson and Hepner denied him his one hour recreation time and forced him to reside in a small cell with two other inmates. (Id. at 5, ¶ 24.) Lastly, his phone and visiting privileges were suspended during the entire time period by defendants Holencik, Williamson, Hogsten, Lyons, and Feltman. (Id. at 7, ¶ 34.)

He states that as a result of the "illegal confinement," he has developed physical

problems such as panic attacks, insomnia, loss of memory and concentration, severe anxiety, and bleeding and receding of the gums.  (Id. at ¶ 25.)

He represents that he attempted to exhaust his administrative remedies on two separate occasions, but his attempts were thwarted by his counselor, defendant Simmons.  (Doc. 56, at 4, ¶¶ 20, 21.)

## B.    Standard of Review

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides for the dismissal of complaints that fail to state a claim upon which relief can be granted. FED. R. CIV. P. 12(b)(6).  When ruling on a motion to dismiss under Rule 12(b)(6), the court must "accept as true all [factual] allegations in the complaint and all reasonable inferences that can be drawn therefrom, and view them in the light most  favorable to the plaintiff." Kanter v. Barella, 489 F.3d 170, 177 (3d Cir. 2007) (quoting Evancho v. Fisher, 423 F.3d 347, 350 (3d Cir. 2005)). Although the court is generally limited in its review to the facts contained in the complaint, it "may also consider matters of public record, orders, exhibits attached to the complaint and items appearing in the record of the case." Oshiver v. Levin, Fishbein, Sedran & Berman, 38 F.3d 1380, 1384 n. 2 (3d Cir. 1994); see also In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1426 (3d Cir. 1997).

Federal notice and pleading rules require the complaint to provide "the defendant notice of what the . . . claim is and the grounds upon which it rests." Phillips v. County of Allegheny, 515 F.3d 224, 232 (3d Cir. 2008) (quoting Bell Atl. Corp. v. Twombly, 550 U.S.

544, 555 (2007)).  The plaintiff must present facts that, if true, demonstrate a plausible right

to relief.  See FED. R. CIV. P. 8(a) (stating that the complaint should include "a short and

plain statement of the claim showing that the pleader is entitled to relief"); Ashcroft v. Iqbal,

---U.S. ----, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (explaining that Rule 8 requires

more than "an unadorned, the-defendant unlawfully-harmed-me accusation"); Twombly, 550

U.S. at 555 (requiring plaintiffs to allege facts sufficient to "raise a right to relief above the

speculative level").  Thus, courts should not dismiss a complaint for failure to state a claim if

it contains "enough factual matter (taken as true) to suggest the required element.  This does

not impose a probability requirement at the pleading stage, but instead simply calls for

enough facts to raise a reasonable expectation that discovery will reveal evidence of the

necessary element." Phillips, 515 F.3d at 234 (quoting Twombly, 550 U.S. at 556).  Under

this liberal pleading standard, courts should generally grant plaintiffs leave to amend their

claims before dismissing a complaint that is merely deficient.  See Grayson v. Mayview State

Hosp., 293 F.3d 103, 108 (3d Cir. 2002); Shane v. Fauver, 213 F.3d 113, 116-17 (3d Cir.

2000).

### C.    Discussion

1.    Subject matter jurisdiction

Defendants initially contend that this court "should dismiss any Bivens monetary

claims against the United States, its departments and/or agencies, or the individual

defendants in their official capacities . . . for lack of jurisdiction over the subject matter.

(Doc. 69, at 9.) A <u>Bivens</u> cause of action was created in part because government agencies are immune from suit under the doctrine of sovereign immunity. <u>FDIC v. Meyer</u>, 510 U.S. 471, 485 (1994). Consequently, the court lacks subject matter jurisdiction over <u>Bivens</u> claims against the United States and its agencies. <u>See id.</u> at 483-86; <u>see also</u> <u>Munoz v. Attorney for U.S. Executive Office</u>, No. 4:03-CV-2293, 2006 WL 2246413, at *7 (M.D.Pa. Aug.4, 2006) (dismissing <u>Bivens</u> claims against the United States for lack of subject matter jurisdiction because "constitutional claims against the United States are barred by sovereign immunity.") It therefore follows that claims against individual federal defendants in their official capacities are barred as these claims are essentially against the United States. <u>Bell v. Rossotti</u>, 227 F. Supp. 2d 315, 320 (M.D.Pa. 2002).

In his response brief, Torrealba clarifies that he is only seeking declaratory and injunctive relief against the defendants in their official capacities, not monetary relief. In any event, he concedes that his requests for declaratory and injunctive relief are moot because he has been transferred from FCI-Allenwood. Defendants' motion will be denied.

    2.    <u>Equal Protection</u>

The Equal Protection Clause of the Fourteenth Amendment essentially directs that all persons similarly situated should be treated alike. <u>City of Cleburne, Texas v. Clebune Living Center</u>, 473 U.S. 432, 439 (1985); <u>Artway v. Attorney General of New Jersey</u>, 81 F.3d 1235, 1267 (3d Cir.1996). There are no allegations by Torrealba that he has received different treatment from that received by other individuals similarly situated. <u>See</u> <u>Andrews v. City of</u>

Philadelphia, 895 F.2d 1469, 1478 (3d Cir.1990). The motion will be granted as to the equal protection claim.

## D. Conclusion

Based on the foregoing, defendants' motion to dismiss will be granted in part and denied in part.

## III    Motion for Summary Judgment

### A.    Statement of Facts[3]

Torrealba was removed from general population and placed in the SHU at FCI-Allenwood on June 17, 2004, pursuant to an administrative detention order authored by Lieutenant Farmer and witnessed by Officer Danner. (Doc. 70-2, Declaration of Judge Simmons ("Simmons Dec."), at 19, ¶ 3; Doc. 70-2, at 22.) The administrative detention order stated that Torrealba was being placed in administrative detention "pending investigation of a violation of Bureau regulations." (Doc. 70-2, at 22.) It further stated as follows:

> It is this officer's decision based on all the circumstances that the above named inmate's continued presence in the general population poses a serious threat to life, property, self, staff, other inmates, or to the security or orderly running of the institution because conducting an illegal act in a controlled environment can lead to disruptive and often violent conduct which threatens the safety of inmates and staff, as well as the security of the institution. Being involved in illicit activities, not following staff member's direction or theft from another person, can lead to violent and/or assaultive conflicts between inmates. Accordingly, the above named inmate pending a SIS investigation. Therefore, the above named inmate

---

[3]In accordance with the standard of review for a motion for summary judgment, the court will present the facts in the light most favorable to Torrealba, the non-moving party.

is to be placed in Administrative Detention until further notice.

(Id.) The investigation involved many inmates and concerned the introduction of LSD into the institution. (Doc. 70-2, *In Camera* submission of Declaration of Lieutenant James Lyons ("Lyons Dec."), at 2, ¶ 6.) Defendant Williamson was warden at the time Torrealba was placed in SHU. (Doc. 70-2, Declaration of Michelle Wirth ("Wirth Dec."), at 43, ¶ 3.) He remained in the SHU from June 17, 2004, through May 10, 2006, when he was transferred from FCI-Allenwood. (Id. at ¶ 4.) At the time of his transfer, Karen F. Hogsten held the position of warden. (Wirth Dec. at 43, ¶ 4.) A warden in not involved in SHU decisions pending an investigation that continues for thirty days or more. (Doc. 70-2, Wirth Dec. at 44, ¶ 5.)

Pursuant to BOP Program Statement 5270.07, Inmate Discipline and Special Housing Units, the Segregation Review Officer] ("SRO") must review the status of inmates housed in administrative detention. (Doc. 70-2, at 32.) The SRO is required to conduct a review within three work days of an inmate's placement in administrative detention, hold a hearing and review the status of all inmates spending seven continuous days in administrative detention, review the cases on the record each week, and hold a hearing and review the cases at least every thirty days. (Id.) "The inmate appears before the SRO at the hearing unless the inmate waives the right to appear. A waiver may be in writing, signed by the inmate, or if the inmate refuses to sign a waiver, it shall be shown by a memorandum signed by staff and witnessed by a second staff member indicating the inmate's refusal to appear" (Id.) A record

is created noting whether the inmate will continue in special housing, *inter alia*, and a copy is then delivered to the inmates assigned unit for placement in his Central File. (Doc. 70-2, Declaration of James Hepner ("Hepner Dec."), at 26, ¶¶ 4-5.)

The SHU Lieutenant designated as the SRO is responsible for conducting SRO reviews of inmates housed in administrative detention. (Doc. 70-2, at 33.) Defendants Hepner, Shepard and Clarkson, contend that they each conducted thirty day SRO reviews and at the conclusion of each review, advised Torrealba that he would remain in administrative detention until the completion of the SIS investigation. (Doc. 70-2, Hepner Dec., at 28, ¶ 9; Declaration of Lamar Shepard ("Shepard Dec."), at 48, ¶¶ 6-8; Declaration of Scott Clarkson ("Clarkson Dec."), at 58-59, ¶ 8.) None of them had the authority to release Torrealba from the SHU back to general population. (Id. at 27, ¶ 7; Id. at47, ¶ 8; Id. at 58, ¶ 8.) Following their review, they would provide him with a copy of the SRO review and place the review form in a box which was to be picked up by staff and delivered to Torrealba's assigned unit for placement in his Central File. (Id. at 27-28, ¶¶ 8, 9; Id. at 47-48, ¶ 9; Id. at 58-59, ¶¶ 8-10.) Inexplicably, none of the SRO forms are contained in Torrealba's Central File. (Id. at 27-28, ¶ 8; Id. at 47-47, ¶ 9; Id. at ¶ 9.)

In addition to SRO reviews, pursuant to BOP Program Statement 5270.07, Inmate Discipline and Special Housing Units, psychology staff is required to conduct a psychological assessment of every inmate housed in administrative detention in the SHU when detention exceeds thirty days. (Doc. 70-2, at 41.) "When detention continues for an

9

extended period, additional psychological assessments are conducted at one-month intervals. A written assessment must address the inmate's adjustment to the surroundings and the threat the inmate poses to self, staff, and other inmates." (Doc. 70-2, Declaration of Dr. Ronald L. Bonner, Psychologist, ("Bonner Dec.") at 38, ¶ 4.) While housed in administrative detention, Torrealba received twenty-six psychological assessments. (Id. at ¶ 6; Doc. 31, sealed document containing SHU reviews retrieved from the Psychology Data System, at 2-27.) The reviews consisted of an interview with Torrealba and an assessment of his mental status, adjustment, threat to self and threat to others. (Id.) No mental health problems were ever noted and he mainly reported being "OK." (Id.) He also had weekly access to psychology staff while housed in the SHU. He received an individual counseling session, at his request, on September 17, 2004. ((Doc. 70-2, Bonner Dec., at ¶ 7.) He requested no other services from the Psychology Department.

Torrealba disputes that defendants conducted a single SRO review or psychological assessment during the entire twenty-four month detention period. In support of his position, he submits affidavits of three other inmates that were housed in the SHU during the same period. Each inmate claims that during their time housed in the SHU, they never received SRO reviews or hearings or psychological assessments. (Doc. 114, at 3-5.)

Upon initial placement in the SHU, suspension of his visiting and phone privileges was approved by Holencik, Acting Warden. (Doc. 70-2, Lyons Dec. at 3, ¶ 8.) While housed in the SHU, he was permitted five hours of recreation/exercise time per week, unless

extraordinary circumstances did not permit exercise time. (Doc. 70-2, Shepard Dec, at 46, ¶ 5.)

He states that defendants Lyons and Feltmen violated his constitutional rights by confining him to administrative detention for twenty-four months under the "pretext" of an investigation. Lyons and Feltman, as well as Holencik, Williamson, and Hogsten also violated his rights when they suspended his phone and visiting privileges. He also contends that defendants Holencik, Williamson, and Hogsten failure "to take disciplinary or other action to curb the 'known' pattern of the staffs [sic] 'deliberate indifference' to correct procedure in accordance with policy and law contributed and proximately caused the multiple violations of constitutional rights listed within this complaint. . . ." (Doc. 56, at 6, ¶ 30.)

The SIS investigation concluded on March 7, 2006. (Lyon's Dec. at ¶ ¶ 6-9.) He remained in the SHU until through May 10, 2006, when he was transferred from FCI-Allenwood. (Id. at ¶ 10.)

On December 10, 2004, Torrealba attempted to file two administrative remedy requests appealing an investigation. They were rejected on the same date because he failed to provide evidence that he attempted informal resolution. (Doc. 70-2, Declaration of Joseph McCluskey ("McCluskey Dec."), at 7, ¶ 12.) Torrealba insists that defendant Simmons prevented him from exhausting his administrative remedies by failing to give him grievance forms and failing to respond to requests. (Doc. 115, at 15.)

**B.  Standard of Review**

Through summary adjudication the court may dispose of those claims that do not

present a "genuine issue as to any material fact" and for which a jury trial would be an empty

and unnecessary formality.  See FED. R. CIV. P. 56(c).  The burden of proof is upon the

non-moving party to come forth with "affirmative evidence, beyond the allegations of the

pleadings," in support of its right to relief. Pappas v. City of Lebanon, 331 F. Supp. 2d 311,

315 (M.D. Pa. 2004); FED. R. CIV. P. 56(e); see also Celotex Corp. v. Catrett, 477 U.S. 317,

322-23 (1986).  This evidence must be adequate, as a matter of law, to sustain a judgment in

favor of the non-moving party on the claims.  See Anderson v. Liberty Lobby, Inc., 477 U.S.

242, 250-57 (1986); Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587-89

(1986); see also FED. R. CIV. P. 56(c), (e).  Only if this threshold is met may the cause of

action proceed.  Pappas, 331 F. Supp. 2d at 315.

**C.  Discussion**

1.    Failure to exhaust available administrative remedies

The exhaustion procedure to be utilized by federal inmates is the administrative

remedy protocol established by the Bureau of Prisons ("BOP") and set forth at 28 C.F.R. §§

542.10-542.19.  Pursuant to this protocol, an inmate first must present his complaint to staff,

and staff must attempt to resolve informally any issue before an inmate files a request for

administrative relief.  See § 542.13(a).  If informal resolution proves unsuccessful, the inmate

may raise the complaint with the warden of the institution where he or she is confined.  See

id. An inmate has twenty calendar days from the date of the alleged injury within which to complete this informal resolution process. See § 542.14(a). If an inmate is dissatisfied with the response received during the informal resolution process, he or she may appeal the decision to the Regional Office and the General Counsel of the BOP. See § 542.15. A BOP decision is not final—and thus not reviewable—until relief has been denied by the General Counsel's Office. Id. If at any point an inmate misses a deadline imposed by federal regulations, BOP policy requires that the inmate seek an extension of time within which to file his or her grievance. See § 542.14(b). Acquisition of an extension requires that an inmate provide a "valid reason for the delay." Id.

Defendants establish that Torrealba has not filed a single administrative remedy concerning the lack of SRO reviews or hearings, the lack of psychological evaluations, denial of recreation time, placement in the SHU without being charged with misconduct and being given a hearing, or defendants' inaccurate record-keeping. (Doc. 69, at 11; Doc, 70-2, McCluskey Dec., at 7-8, ¶¶ 10-13.) Torrealba states that he attempted to pursue administrative remedies, but was thwarted by his counselor. (Doc. 115, at 13-14.) His counselor, defendant Simmons, states that he "never denied Plaintiff an attempt to informally resolve any issue nor did [he] ever deny him any administrative record form." (Doc. 70-2, Declaration of Judge Simmons ("Simmons Dec."), at 20, ¶ 7.)

Review of the record reveals that there are disputed issues of material fact on the issue of he exhausted administrative remedies with regard to the lack of SRO reviews or

hearings, the lack of psychological evaluations, denial of recreation time, placement in the

SHU without being charged with misconduct and being given a hearing, or defendants'

inaccurate record-keeping relating to his placement in administrative custody. Accordingly,

defendants' request for summary judgment on the basis of non-exhaustion will be denied.

2.    Personal involvement/Respondeat Superior

Defendants seek dismissal of the complaint against defendants Williamson, Hogsten,

Feltman, Lyons, Holencik, and Simmons based on their lack of personal involvement in

conduct amounting to a constitutional violation. "A defendant in a civil rights action must

have personal involvement in the alleged wrongs. . . . Personal involvement can be shown

through allegations of personal direction or of actual knowledge and acquiescence." Rode v.

Dellarciprete, 845 F.2d 1195, 1207-08 (3d Cir. 1988); see also, Rizzo v. Goode, 423 U.S. 362

(1976); Atkinson v. Taylor, 316 F.3d 257 (3d Cir. 2003). Thus, individual liability can be

imposed under Section 1983 only if the state actor played an "affirmative part" in the alleged

misconduct. Rode, *supra*. Alleging a mere hypothesis that an individual defendant had

personal knowledge or involvement in depriving the plaintiff of his rights is insufficient to

establish personal involvement. Rode, 845 F.2d at 1208.

Additionally, liability cannot be predicated solely on the operation of *respondeat*

*superior*. Rizzo, 423 U.S. 362; Rode v. Dellarciprete, 845 F.2d at 1207. Therefore, to

maintain a claim for supervisory liability, plaintiff "must show: 1) that the supervising

official personally participated in the activity; 2) that the supervising official directed others

14

to violate a person's rights; or 3) that the supervising official had knowledge of and acquiesced in a subordinate's violations." Robinson v. City of Pittsburgh, 120 F.3d 1286, 1293 (3d Cir. 1997); Baker v. Monroe Twp., 50 F.3d 1186, 1190-91 (3d Cir. 1995).

There are no allegations that Holencik, Williamson, Hogsten, Feltman, Lyons, or Simmons was involved in, or had knowledge of, any decision relating to Torrealba's placement in the SHU or the purported denials of psychological assessments and SRO Reviews. For instance, although Holencik authorized the temporary suspension of Torrealba's phone and visiting privileges, there is nothing in the record to suggest that he had any role in the decision to place Torrealba in the SHU. Nor is there any indication that either warden Williamson or Hogsten was even aware that Torrealba was being housed in the SHU. Rather, the allegations against these defendants are solely based upon their supervisory roles at the prison. According to the record, the detention order was authored by Lieutenant Farmer and witnessed by Officer Danner. There is no evidence that suggests that any of the named defendants had direct involvement or acquiescence in the SHU placement decision or procedures. Likewise, while defendants Feltman and Lyons may have been involved in the SIS investigation, and although defendant Simmons was Torrealba's counselor, there is no indication that any of them played any part in the decision to confine him to the SHU.

As concerns any claim that defendants Holencik, Williamson, Hogsten, or Simmons, obstructed the grievance procedure in failing to grant relief or take corrective action, such a claim is without merit because prison inmates do not have a constitutionally protected right to

a grievance procedure. See Jones v. North Carolina Prisoners' Labor Union, Inc., 433 U.S. 119, 137-38 (1977).

### 3. Cruel and unusual punishment

The Eighth Amendment prohibits infliction of cruel and unusual punishment, thus mandating prison officials to provide humane conditions of confinement. The Constitution, however, "does not mandate comfortable prisons," Rhodes v. Chapman, 452 U.S. 337, 349 (1981), and prison officials must merely ensure that inmates receive adequate food, clothing, shelter, and medical care, plus must "take reasonable measures to guarantee the safety of the inmates." Farmer v. Brennan, 511 U.S. 825, 832 (1994) (quoting Hudson v. Palmer, 468 U.S. 517, 526-27 (1984)). To state a claim under the Eighth Amendment, an inmate must allege both objective and subjective components. See Wilson v. Seiter, 501 U.S. 294, 298, (1991).

The objective component mandates that "only those deprivations denying 'the minimal civilized measure of life's necessities . . . are sufficiently grave to form the basis of an Eighth Amendment violation," Helling v. McKinney, 509 U.S. 25, 32 (1993) (quoting Rhodes v. Chapman, 452 U.S. 337, 346 (1981)) (emphasis supplied), hence requiring that the deprivation sustained by a prisoner be "extreme deprivations." Hudson v. McMillian, 503 U.S. 1, 9 (1992). The subjective component requires that the state actor have acted with "deliberate indifference," that is, with a state of mind equivalent to a reckless disregard of a known risk of harm. See Farmer, 511 U.S. at 835; Wilson, 501 U.S. at 303. In sum, an

inmate may satisfy (1) the objective component by showing that he was deprived of "the minimal civilized measure of life's necessities," such as adequate food, clothing, shelter, sanitation, medical care, and personal safety, Rhodes v. Chapman, 452 U.S. at 347-48; Young v. Quinlan, 960 F.2d 351, 364 (3d Cir.1992), and (2) the subjective component by demonstrating that prison officials knew of such substandard conditions or treatment and "acted or failed to act with deliberate indifference to a substantial risk of harm to inmate health or safety." Ingalls v. Florio, 968 F.Supp. 193, 198 (D.N.J.1997).

### a. Placement in SHU

Torrealba is unable to meet these two prongs with respect to his confinement in the SHU. A prolonged administrative detention, by itself, does not amount to a cruel and unusual punishment. See Imprisoned Citizens Union v. Shapp, 451 F. Supp. 893, 897 (E.D.Pa. June 7, 1978) (citing United States ex rel. Tyrrell v. Speaker, 471 F.2d 1197, 1202 (3d Cir.1973)); See Sharp v. Johnson, 2005 U.S. Dist. LEXIS 36322 (W.D.Pa. Dec. 28, 2005) (plaintiff's allegations that defendants' actions in confining him in administrative custody for over thirty months amounted to cruel and unusual punishment did not state a claim upon which relief may be granted). Further, as noted above, the named defendants were not responsible for Torrealba's placement in the SHU. Therefore, we cannot conclude that any of the defendants acted "maliciously and sadistically for the very purpose of causing harm." Hudson v. McMillian, 503 U.S. 1, 6 (1992).

17

*b.* *Visitation, telephone and recreation privileges*

Torrealba's visitation and telephone privileges were suspended during his SHU

confinement and he alleges that he was often denied recreation. Loss of privileges, in

general, does not amount to infliction of cruel and unusual punishment; and loss of visitation

telephone and recreation privileges is no exception to this rule. See Overton v. Bazzetta, 539

U.S. 126 (2003) (noting that there is no constitutional right to visits for inmates and

clarifying that "[t]he very object of imprisonment is confinement. Many of the liberties and

privileges enjoyed by other citizens must be surrendered by the prisoner. An inmate does not

retain rights inconsistent with proper incarceration. Freedom of association is among the

rights least compatible with incarceration. Some curtailment of that freedom must be

expected in the prison context"); Leon v. Schaaff, 2005 U.S. Dist. LEXIS 22462, at *3

(D.N.J. Sept. 23, 2005) (lost commissary and telephone privileges and placement in

disciplinary confinement for 120 days do not impose atypical and significant hardship upon

an inmate); Troy v. Kuhlmann, 1999 U.S. Dist. LEXIS 16027, at *12 (S.D.N.Y. Oct. 15,

1999) (stating "denial of privileges such as telephone, package, and commissary privileges

do not represent the type of deprivation which could reasonably be viewed as imposing an

atypical and significant hardship on the inmate"); accord Sealey v. Giltner, 197 F.3d 578 (2d

Cir.1999) (finding no violation of the Eighth Amendment where "[a]n inmate [was] confined

to his cell 23 hours per day, [could] take no more than three showers per week, ha[d] limited

library privileges and no telephone privileges); French v. Owens, 777 F.2d 1250, 1255 (7th

Cir.1985) (pointing out that lack of exercise may rise to a constitutional violation only if the deprivation is such that "movement is denied [to such extent that] muscles are allowed to atrophy [and] the health of the individual is threatened"); Phillips v. Norris, 320 F.3d 844 (8th Cir.2003) (finding loss of privileges of contact visitations, yard and gym call, and chapel did not violate the Eighth Amendment); Thomas v. Ramos, 130 F.3d 754 (7th Cir. 1997) (holding that where an inmate asserted that, while in segregation, he was not permitted to take any classes, use the gym, work at an assignment, earn pay, have access to a "day room," or take programs offered to inmates in the general population and protective custody, the court properly found that the disciplinary segregation was not "atypical and significant hardship" and dismissed the Eighth Amendment claim). In fact, it has been expressly established that the denial of such privileges "simply does not amount to the infliction of pain." Toussaint v. McCarthy, 801 F.2d 1080, 1113 (9th Cir.1986) (citing Rhodes, 452 U.S. 337, and Hoptowit v. Ray, 682 F.2d 1237, 1254-55 (9th Cir.1982) (holding that idleness and lack of programs were not violations of the Eighth Amendment because they do not amount to infliction of pain)). Since the privileges at issue do not qualify as the minimal necessities of life, such as adequate food, clothing, shelter, sanitation, medical care and personal safety, Torrealba's claims fail.

4.   First Amendment

Even if the Court were to construe the claims under the First Amendment, they would be without merit. It has been held that "incarcerated persons maintain no right to simple

physical association .. . grounded in the First Amendment." Thorne v. Jones, 765 F.2d 1270, 1274 (5th Cir.1985). The Supreme Court has stated that, "[t]he concept of incarceration itself entails a restriction on the freedom of inmates to associate with those outside the penal institution." Jones v. North Carolina Prisoners' Labor Union, Inc. 433 U.S. 119, 126 (1977). While the denial of visitation may be harsh, "it is part of the penalty that criminals pay for their offenses against society." Toussaint, 801 F.2d at 1114 (citing Rhodes, 452 U.S. 337).

5.     Fifth and Fourteenth Amendment Due Process

An inmate has no constitutionally protected liberty interest in his place of confinement, transfer, or classification. Sandin v. Conner, 515 U.S. 472, 483 (1995); Meachum v. Fano, 427 U.S. 215; Moody v. Daggett, 429 U.S. 78, 88 n. 9 (1976); Futch v. Dewey, 317 F. App'x 102, 104 (3d Cir. 2009) (not published). Nor does a prisoner have a liberty interest in a particular housing assignment within a prison system. See McKune v. Lile, 536 U.S. 24, 39 (2002) ("It is well settled that the decision where to house inmates is at the core of prison administrators' expertise."); Hewitt v. Helms, 459 U.S. 460 (1983), (no liberty interest in remaining in general population rather than administrative segregation); Barr v. DiGuglielmo, 2008 WL 2786424 (E.D.Pa.2008) (no liberty interest in being housed in particular wing of prison). The Third Circuit has held that a prisoner's placement in administrative detention and an extended stay in a Special Housing Unit do not constitute atypical and significant hardships. Wilson v. Hogsten, 269 Fed.Appx. 193, 195-96 (3d Cir. 2008). " 'As long as the conditions or degree of confinement to which [a] prisoner is

subjected is within the sentence imposed upon him and is not otherwise violative of the Constitution, the Due Process Clause does not in itself subject an inmate's treatment by prison authorities to judicial oversight.' " Hewitt v. Helms, 459 U.S. at 468 (quoting Montanye v. Haymes, 427 U.S. 236, 242 (1976)). It has thus been determined that the transfer of a prisoner from one classification is unprotected by " 'the Due Process Clause in and of itself,' " even though the change in status involves a significant modification in conditions of confinement. Hewitt, 459 U.S. at 468 (citation omitted); Moody, 429 U.S. 78; see also Brown v. Cunningham, 730 F.Supp. 612 (D.Del.1990) (plaintiff's transfer from general population to administrative segregation, without being given notice and opportunity to challenge it, was not violation of plaintiff's liberty interest).

Additionally, in Sandin v. Conner, 515 U.S. 472 (1995), the Supreme Court held that prison conditions do not impact a protectable liberty interest unless they result in an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Sandin, 515 U.S. at 483. As explained by our Court of Appeals, an "atypical and significant hardship" under Sandin requires the examination of two factors: (1) the amount of time the prisoner was placed into disciplinary segregation; and (2) whether the conditions of confinement in disciplinary segregation were significantly more restrictive than those imposed on other inmates in restrictive custody. Shoats v. Horn, 213 F.3d 140, 144 (3d Cir.2000). Employing the due process analysis in Sandin, federal courts, including the United States Court of Appeals for the Third Circuit, have concluded that placement in restrictive

confinement for periods of up to one year, and more, does not trigger a constitutionally protected liberty interest as it does not constitute an atypical and significant hardship in relation to the ordinary incidents of prison life. See, e.g., Smith v. Mensinger, 293 F.3d 641 (3d Cir.2002) (upholding district court's dismissal of prisoner's due process claim concerning seven months disciplinary detention); Griffin v. Vaughn, 112 F.3d at 706 (holding that it is not atypical to be exposed to conditions of administrative custody for periods as long as 15 months as such stays are within the expected parameters of an inmate's sentence). In fact, an inmate placed in administrative custody pursuant to a legitimate penological reason could "be required to remain there as long as that need continues." Griffin, 112 F.3d at 709.

Torrealba was placed in administrative confinement for approximately two years pursuant to a detention order that specified that he was being investigated for possible involvement in illegal acts. Although there is a dispute in the record as to whether SRO reviews were conducted during that time period, this has little bearing on this stage of the analysis.[4] Placing, or more accurately, maintaining Torrealba in administrative confinement for that period of time without any hearing does not impose such an atypical and significant hardship as a matter of law and so does not deprive him of any liberty interest. See e.g., Griffin, 112 F.3d 703 (finding that confinement in administrative custody for fifteen months with only one hour of exercise per day five days per week did not amount to an atypical and

---

[4]Notably, Torrealba received twenty-six psychological assessments throughout his stay in administrative confinement.

significant hardship and thus did not deprive prisoner of a liberty interest); Siddiq v. Edlund, 8 Fed.App'x. 522, 524 (6th Cir. 2001) ("placement in administrative segregation [for twenty months] did not constitute an 'atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.' "); Jones v. Baker, 155 F.3d 810 (6th Cir.1998) (administrative confinement for two and one-half years was not atypical and significant) (cited approvingly in Fraise v. Terhune, 283 F.3d 506, 523 (3d Cir. 2002)); Washington-El v. Diguglielmo, No. 06-CV-4517, 2008 WL 2954745 (E.D.Pa. July 29, 2008) (17 months in administrative custody is not atypical and significant so as to qualify as a liberty interest); Walker v. Hughes, 558 F.2d 1247, 1252 (6th Cir.1977) ("Federal statutory law gives . . . prison officials full discretion in the treatment of prisoners and does not restrict the authority of prison officials over the inmates as to placement in more restrictive living status, transfer to other prisons . . . .").

Moreover, none of the losses enumerated by Torrealba rises to the level of an atypical and significant hardship in relation to the ordinary incidents of prison life.[5] "The

_____

[5]Conversely, in Shoats v. Horn, 213 F.3d 140 (2000), our Court of Appeals determined what due process requirements must be afforded to long term administrative confinement inmates. Shoats had been confined in Administrative confinement for over eight years with no projected plans for his release. In fact, prison officials had indicated that his projected segregation in administrative confinement was indefinite and conceivably could continue for the rest of his life. The Shoats' court also concluded that the conditions to which he was subjected were atypical and imposed a significant hardship on him in relation to the ordinary incidents of prison life. For instance, he was in virtual isolation for almost eight years. He was confined in his cell for twenty-three hours a day, five days a week, and twenty-four hours a day, two days a week. He ate meals by himself and his sole contact was with corrections officials and he was prohibited from participating in any activities. Notwithstanding these conditions, the Third Circuit determined that Shoats had received all

23

determination of what is 'atypical and significant' is based upon the range of conditions an inmate would reasonably expect to encounter." McKeithan v. Jones, 212 Fed. App'x. 129, 130 (3d Cir. 2007) (citing Asquith v. Dep't. of Corrections, 186 F.3d 407, 412 (3d Cir. 1999); Griffin v. Vaughn, 112 F.3d 703, 706 & n. 2 (3d Cir. 1997)). There is no doubt that an inmate would expect to encounter the loss of phone or visitation privileges during imprisonment. Likewise, an inmate would expect to experience disruptions in recreation schedules. As concerns the lack of SRO reviews, Torrealba doesn't contend that the failure to conduct monthly reviews, or keep accurate paperwork in accordance with regulations, resulted in conditions that were unduly harsh or restrictive. None of the conditions of which Torrealba complains gives rise to procedural due process concerns.[6] See Bryant v. Cortez, 536 F. Supp.2d 1160 (C.D.Cal.2008) (finding placement of state inmate in administrative segregation unit for eighteen months pending resolution of disciplinary charge against him did not impose atypical and significant hardship on inmate in relation to ordinary incidents of

_____

the due process protections to which he was entitled because he received periodic review of his AC status through the DOC procedures outlined in DOC policy statement 802. Shoats, 213 F.3d at 146.

[6]Recently, the United States Court of Appeals for the Third Circuit held, in an unpublished opinion, that an inmate sentenced to an aggregate of 930 days in disciplinary confinement without dayroom or telephone privileges did not constitute an atypical and significant hardship sufficient to trigger a liberty interest under Sandin. See Young v. Beard, 227 F. App'x 128 (3d Cir. 2007) (not published). If a sentence of 930 days in disciplinary confinement does not implicate a liberty interest, then certainly Torrealba's administrative confinement, absent atypical or significantly harsh conditions of that confinement in relation to other prison conditions, does not implicate a liberty interest.

24

prison life, and thus did not violate inmate's due process rights, even though placement entailed restrictions on inmate's exercise, shower, hygiene, and visitation privileges, and denial of work and educational opportunities, and state law required officials to conduct disciplinary hearing within thirty days).

He also claims that he was denied psychological assessments as required by BOP policy. As noted in the statement of facts, *supra*, while housed in administrative detention, Torrealba received twenty-six psychological assessments, all of which included an interview with Torrealba and an assessment of his mental status, adjustment, threat to self, threat to others, and the conclusion that he was not experiencing any mental health problems. He had weekly access to psychology staff while housed in the SHU, and, on September 17, 2004, he received an individual counseling session, at his request. ((Doc. 70-2, Bonner Dec., at ¶ 7.) Torrealba was provided with the mandated psychological assessments while housed in the SHU. Summary judgment will be granted in favor of defendants on this claim.

D.    Conclusion

Based on the foregoing, defendants motion for summary judgment will be denied on the grounds of exhaustion and qualified immunity. The motion will be granted in all other respects.[7]

---

[7]Defendants alternatively argued that they are entitled to qualified immunity. (Doc. 69, at 20.) Qualified immunity, as the Supreme Court has explained, is the principle that "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). Given the plethora of caselaw in the areas at issue, and

IV.    **Conclusion**

Based on the above, defendants' motion to dismiss will be granted in part and denied

in part.  The motion for summary judgment will be granted in part and denied in part and

judgment will be entered in favor of defendants and against plaintiff.

An appropriate order follows.


                                        **BY THE COURT:**


                                        **s/James M. Munley**
                                        **JUDGE JAMES M. MUNLEY**
                                        **United States District Court**


Dated: October 8, 2009

_____

the clearly established parameters, this argument is rejected.

# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **EDGAR A. TORREALBA,** | : | **CIVIL NO. 3:CV-06-0108** |
| **Plaintiff** | : | |
| | : | **(Judge Munley)** |
| **v.** | : | |
| | : | |
| **KAREN HOGSTEN, et al.,** | : | |
| **Defendants** | : | |

## ORDER

**AND NOW**, to wit, this 8th day of October 2009, upon consideration of defendants'

motion to dismiss or, in the alternative, for summary judgment (Doc. 68), and in accordance

with the foregoing memorandum, it is hereby ORDERED that:

1. Defendants' motion to dismiss is DENIED with respect to the official capacity argument.

2. Defendants' motion to dismiss is GRANTED on the Equal Protection claim.

3. Defendants' motion for summary judgment is DENIED with respect to plaintiff's attempts at administrative exhaustion and the defense of qualified immunity.

4. Defendants' motion for summary judgment is GRANTED in all other respects.

5. The Clerk of Court is directed to ENTER judgment in favor of defendants and against plaintiff.

6. Plaintiff's motion for production of documents (120) is DENIED as moot

7. Plaintiff's motion to exceed the page limitation(122) is GRANTED. Plaintiff's brief in excess of fifteen pages is accepted for filing and consideration by the court.

8. Plaintiff's motion to amend (Doc. 126) is DENIED.

9.    The Clerk of Court is directed to CLOSE this case.

BY THE COURT:


s/James M. Munley
**JUDGE JAMES M. MUNLEY**
**United States District Court**